Our last case for argument this morning is Adams v. C3 Pipeline. Good morning, Your Honors. Good morning. We're ready to hear from the appellant. Yes, Your Honors. Tim Attler on behalf of Appellant Jessica Adams. Your Honors, summary judgment without discovery should be the rare exception and not the rule. There needs to be a compelling policy reason to skip over discovery entirely, as was done in this case. But this case, Your Honors, is not within the rare class of cases in which summary judgment without discovery is appropriate. To the contrary, this case involves claims that are all heavily fact-driven. And by granting summary judgment to the Plains defendants and denying Rule 56d relief to Ms. Adams and denying her leave to amend on her premises liability claims, the district court essentially shielded the defendant from being subject to discovery at all. So could I just ask you, did you make any attempt to take discovery between the time that the Plains defendants moved for summary judgment, which I understand was on October 10, 2018, and when the district court granted summary judgment on May 23, 2019? Your Honor, the record doesn't show that any discovery was served during that time, but I think it's important to note that Ms. Adams made a forceful claim that the summary judgment motion should not be decided before discovery had been taken. Well, did the federal rules preclude her from seeking discovery when a summary judgment motion was pending? I don't believe that they precluded it, but I will just say that I think Ms. Adams' focus was on countering the motion, on asking the court's permission to conduct that additional discovery, and the court denied that permission. But what probable facts did you identify in your Rule 56d affidavit that would preclude summary judgment under the Knitter case? Well, Your Honor, several. So the... I'm talking about the affidavit now, not something else. Yes, and I'm going to address that. So counsel's affidavit in this case sought information concerning the relationships and responsibilities between the multiple defendants and their inspectors who had been giving instructions to Ms. Adams. It sought discovery on the actions of the defendants and their inspectors in determining the terms and conditions of her discovery. Counsel, didn't the court already have that information? The court had one-sided information, Your Honor. The court had cherry-picked facts from the defendant based on their affidavits, one of which actually was not signed. And that gets to the heart of the problem of having summary judgment without discovery. You get a defendant who gets to... who's in control of the evidence, who gets to essentially define the universe of facts, the summary judgment record. Those are untested facts. Every single one of them should have an asterisk next to it that says, this affiant has never been deposed. This defendant has never had to respond to written discovery. A key distinction, Your Honor, between the Knitter case and this one is that summary judgment in the Knitter case occurred after the close of discovery. And so that makes all of the difference in the world. This would be a very different case before this court if Ms. Adams was coming to the court saying, I'd like to have more discovery even though discovery is closed. Discovery never even started. In fact, initial disclosures were never exchanged. The names and addresses and contact information of key witnesses never provided until apparently the summary judgment motion was filed. Your Honor, it should be a rare circumstance when a plaintiff learns for the first time who defendant's witnesses are in attachments to a summary judgment motion. It truly is anomalous. And this is recognized, Your Honors, by Supreme Court precedent. The Supreme Court in Celatex and in Anderson v. Liberty Lobby talks about the burden shifting that occurs under Rule 56. And inherent in that is a reasonable, or I think the term adequate, is used. An adequate opportunity to conduct discovery. And the court has expressed concern about a defendant essentially railroading a plaintiff by filing a premature motion. And it points to what was then Rule 56F, now Rule 56D, as a safeguard against that kind of... Rule 56F, which indicates my age, but I think that was a better rule than the rule we have now. Because it seems under that rule, at least the way I thought it was applied and used, is when you were facing a motion for summary judgment, you could seek discovery at that time in order to respond to it. Because the motion listed all kinds of facts that if, as a plaintiff in this case, you had no idea if they were true or false. So you said to the court, I would like more discovery. Now the new rule, it seems, puts you in the position of filing a response. And then it's up to the district court to say, well, whether or not, in its discretion, you will be given discovery after you've already responded. Is that not the scenario we have here? I think the rule does suggest that kind of a change. But I think it's also important to know that while Rule 56 will allow the summary judgment motion to be filed at any time, that doesn't mean it should be or that it's not premature if it's done. And the standard for a Rule 56d review remains the same. It should be liberally treated. And there's a reason for that. Well, but we're at abuse of discretion, according to the rule, are we not, at this point? That's true, Your Honor. But it is an abuse of discretion. And I would The deference or rather the, I guess, the how liberal the affidavit should be treated really should be on kind of a sliding scale based on that timing. The defense in this case criticizes the Rule 56d affidavit for being too general. But that's not really fair, because without having any discovery, without, for example, having deposed some of these affiants. I think we can all think of more specific things that could have been alleged in that affidavit, like who does Casey work for? She knew that she had reported her situation to a woman named Casey on the work site. But we do not know, even yet today, who Casey works for. So that might have been something to throw in there. I mean, when you're talking about specific questions that need to be answered, that seems to be a real easy one. Your Honor, actually, that question is answered in the but tried to brush aside her comments as having only come from an administrative assistant. Right. We know that now. But did you know that when you filed your response to the motion for summary judgment? I think that Ms. Adams believed that Casey worked for planes. Okay. But we didn't know. Or you didn't know. No. But Your Honor, you're right. The point is that discovery presents the opportunity to test all kinds of facts that follow from some of these leads that Ms. Adams had. And it's essentially flipping the system on its head. Well, what specifically did you need to know that you didn't know? Well, for example, Ms. Adams needed to know why was Casey telling her that she needed to submit to this harassment or otherwise lose her job? Is that the culture of the work site that planes is running? Are there other instances of this happening? Were some of the other people who were telling her that she needed essentially to keep her mouth shut if she wanted to keep her job? Were those employees of planes, where are they getting this information from? Are they acting on their own? Are they acting according to some unspoken company policy? Standing from this point, having no discovery, it's a lot of speculation. But that's what discovery is about. It's about sitting down, having depositions, narrowing issues. And then, only then, can you start to ask some more specific questions. And that was completely missing in this case, Your Honors. So we argue that- Well, counsel, can I just ask you to address whether the master services agreement, wouldn't you agree that it governs in determining whether the plane's defendants were a joint employer? Your Honor, it is some evidence, but it is not the exclusive evidence. The master services agreement certainly lays out some of the terms. But if the parties deviated from that in practice through their course of dealing, which is what Ms. Adams is alleging, then the strength and importance of the master services agreement is a matter for the jury to weigh. And so it is not, the district court treated the master services agreement as if it were preclusive of any of her arguments. But if the facts on the ground differed from that, then it certainly does not govern, Your Honor. I do want to reserve a little bit of my time. But before I do that, I want to address the stand on different procedural footing. Ms. Adams raised a premises liability claim in response to summary judgment. The district court correctly treated that as a motion to amend her complaint, but essentially dismissed it on the grounds of futility. But that was error because the district court was relying on these factual assertions that the Plains defendants were making. But we shouldn't really be getting into that type of a summary judgment standard on what is essentially a 12B6. How was proximate cause alleged for that claim? What was the basis for proximate cause? Your Honor, the basis is that if the Plains defendants are in control of either the work site or the subcontractors work, and they're having knowledge of this harassment occurring on their site and allowing it to happen there, that's actionable because they have a duty to provide safe workplace in that area. And that would be actionable under New Mexico law. And so what the district court has essentially done is to say that it's not actionable as a matter of law. There's no way this claim could survive under any state of facts. And that's simply wrong, Your Honor, based on the record that was presented below. Well, it doesn't at all harken back again to control and supervision of the employees, even in premises liability, since the C3 employees are the wrongdoers, the harm alleged here. And so you have to look at, okay, what is the proximate cause of their harm and who knew it and what should be done about it? That is one factor that can be dispositive in it, Your Honor. But the different factor that's in the Sherman versus Simerak's case is that liability can also be found based solely on the control of the premises. And so even if the Plains defendants didn't control those employees, but they had control over the premises and allowed this conduct to happen, they could still be liable. Well, but premises liability goes more into things like there's a sinkhole of a quicksand that we all know about who owned the site, but we don't tell anybody about it and someone comes along and falls in it. This is not that. We're talking about actions of other employees. Your Honor, a New Mexico law expressly recognizes that it doesn't need to be a physical defect on the property. The conduct of other human beings can be the dangerous condition. And we've cited that in the brief. At this point, I'd like to reserve the remainder of my time. Thank you. Thank you. We're going to hear from the appellee. Good morning. May it please the court. My name is Kelsey Green and I represent the Plains defendants in this matter. We also currently have a motion to dismiss Ms. Adams' appeal for being untimely. And I understand that Ms. Adams did not discuss that this morning, but I would like to go into that to start if the court is interested. Otherwise, I'll just address Ms. Adams' arguments. Go ahead. It's important that we have jurisdiction. Yes, it is important that the court has jurisdiction. Federal rule of appellate procedure gives the appellant 30 days after an order is entered to file an appeal, to file a case. At the time that the summary judgment was entered by the district court, the only parties to the case, the only persons that had been served were the Plains defendants. C3 had not been served at all and was not a party to the case. And so when the summary judgment was entered, and that was on May 23rd, 2019, plaintiff's time, or Ms. Adams' time rather, to file her timely appeal ran at that point and would have expired sometime in June, 30 days after the partial summary judgment was entered. Now, Ms. Adams has argued in response to an express application of that the court should ignore the rule that itself has acknowledged in its past cases that are cited in our brief, that when the unserved defendants are not considered in the analysis of whether the order is final. And in this case, like I said, the plaintiff, she filed her original complaint in state district court on, let's see, August 3rd, 2018. Summons were issued. She never served those. Two months later, Plains removed the case to the federal court. Plains answered and then Plains filed its MSJ. At no point did Ms. Adams serve C3. The only time that there was any attempt at service was after the district court had dismissed Plains completely. In this instance, and we have a unique instance here, look at directions that the district court gave to the party as regards service. That is, one could clearly anticipate in this scenario that service was going to be achieved or at least attempted, and that issue resolved promptly. Your Honor, the court did enter, in order to show cause, I believe it was the same day that it entered the partial summary judgment. But if we look at the summary judgment and the court's extensive memorandum opinion and order, there is nothing in either one of those documents that indicates that the court was even thinking about C3 or thinking about that this, I'm sorry, that this case would continue. The order to show cause, given that the case had actually been pending for, I believe, nine months at that point, with no attempt at service, none, zero. The case had been pending at nine months. The court has a duty to manage its docket. And at that point, the court was issuing the order to show cause to see if the plaintiffs were even to get the plaintiff, excuse me, was going to even continue the litigation. There's no indication that the court was contemplating further proceedings as that would include Plains or anybody else at that point. The plaintiff did accomplish service shortly after the order to show cause. The summons were issued and service occurred. So there was no indication that was an obstacle to service. Plaintiff simply chose not to serve C3 the first nine, ten months of this litigation. Counsel, can I just ask you then following up on your reference to the cases, isn't it true in those cases there was never subsequent service where here there was? Is that a distinction we should look at? Well, in the Brown case, the court, while it acknowledged that it wasn't necessarily a bright line rule, right, that the orders were final and appealable when the unserved defendants were not considered, the court stated that subsequent adjudication did not necessarily negate that an order was final and appealable when it dealt with only those parties before the court. So the subsequent adjudication I don't think affects in this case because at that point Plains was out. All of the claims that were pending before the court as to any party, the court dismissed those claims with prejudice and the order and the court's opinion does not that say look at the court's intent. When you look through those cases, it's very clear that the court acknowledges there are unserved potential parties to the case, unserved defendants in the caption. They look to representations by counsel. Don't we have that here that the court was aware of unserved parties? The court was aware of unserved parties in its order to show cause, but we don't have any indication by the court in its partial summary judgment and the memorandum opinion and order, which is extensive by the way, that it was, excuse me, that it was anticipating that service would occur and that this litigation would continue. There's no, and in the other cases, the orders by the court, it's very clear that the court was contemplating that the case would continue, that it was not done. Okay, I think we have your arguments on jurisdiction. What about discovery? Yes, discovery. Not every party is entitled to discovery. They're right out of the box or in response to a motion for summary judgment. That's evident with the application of Rule 56D. The rule contemplates that a motion for summary judgment might be filed when discovery had not been had. You filed your motion for summary judgment with your answer, correct? Yes, or shortly thereafter. I believe it was with the answer. Wasn't the plaintiff in Knitter able to take discovery before summary judgment was decided? Yes, the plaintiff in Knitter did have discovery before summary judgment was decided. I don't believe that Knitter was a situation where the motion for summary judgment was filed pre-discovery. So in that sense, it's distinct. But Ms. Adams wanted to depose the Plains Defendant's affiance. Why shouldn't she have had that opportunity here? Well, in her affidavit, your honor, Ms. Adams or Ms. Adams' counsel, rather, did not state specifically that she wanted to depose the affiance. And I think that was the part of the problem that the district court had with the affidavit that was provided. It was not specific enough. But counsel, isn't counsel in a bit of a catch-22 situation in that it's pretty hard to be more specific for the very reason that you need discovery? Well, but there was evidence before the court to which she could have responded and provided what her battle plan was in terms of that evidence. I believe the court was looking at the affidavit and requiring a specificity in terms of how the case procedurally at that point was before it. Not only Ms. Adams had admitted that C-3, the unserved parties or the unserved defendants, were her employer. Plains was before the court on two different routes of imputed liability. Ms. Adams was not pursuing her employer and had not, did not pursue her employer for after what, nine months after she filed the complaint. So if we look at it, this is a question of imputed liability. Plains comes forward to the court and provides the master service agreement that is very expressly provides that C-3 is the employer, is an independent contractor, and that independent contractor relationship is established by that contract. Plains also comes forward and sets out three, I believe four affidavits actually, setting out that they do not pay Ms. Adams, that C-3 is her employer, and that they had no control over the terms and conditions of the employment that would impute liability to them. Would they have control if they had knowledge of what was going on on the worksite? I'm sorry, Your Honor. Would they have control if they knew what was going on on the worksite? The affidavits established that they did not have, they do own the premises where the pipeline is being built. The affidavits establish though that the work is provided, and the inspection services, construction management services, is provided primarily by independent third, I'm sorry. Do we know where the sexual acts occurred? Were they on the worksite? She alleges that some of the underlying acts did occur on the worksite, but if looking further in... That's an open fact then, we don't know about that. Well, if we look further into the EEOC allegations that are attached to her complaint, it appears that all of the acts actually occurred, maybe minus one, actually occurred off the worksite, off the actual job site, off the premises. And we have the issue then too of knowledge of your client as to what was occurring. The affidavit is just one incident. I'm sorry, you dropped out, Your Honor. We have the question, the open fact question of whether or not your client had knowledge of what was occurring, even if it were one incident on the that is included in her affidavit is that she... And in her complaint as well, that she spoke to Casey Walden, who was an administrative assistant for Plains, and she spoke to her at a bar in the restroom. But Ms. Walden had no management responsibilities, and the Plains defendants through their affiance state that they were never aware of any of these incidences until the EEOC complaints were filed. So, the knowledge has been denied, and the affidavit by Ms. Adams... Well, the only way you could ever determine if this was true or false would be through discovery, would it not? What they knew, if they knew anything? The critical facts regarding the relationship and knowledge are not going to change from what the affiance testimony before the court. Ms. Adams' affidavit or her counsel's 56D affidavit, the court did not abuse its discretion in finding it was not specific enough. Time had passed, and counsel had an opportunity to give the court specifically what its plan, as it were, was for discovery as opposed to this broad-brushed, I would like discovery on everything potentially that could be relevant to what the And that liability claim, and I see that my time has almost expired, so I'll be very brief here. That liability claim was raised in her response to the motion for summary judgment. It was not raised in a motion to amend, and it also provided the court the wrong standard. It is not necessarily a standard of ordinary care when you're looking at a premises liability claim involving independent contractors. Again, as the court noted, these are questions of control. The premises liability claim would come into, in terms of an independent contractor, would come into play if there was control. The affidavits, as well as the Master Service Agreement, which provides the essential legal underpinnings of the relationship between C-3 and plans established that plans did not have control that would be necessary to give rise to this claim. If there are any other questions, I'll be happy to address those. Seeing none, thank you. Thank you very much. You have a few seconds left. Thanks, Your Honors. With regard to timeliness, primarily we'll be in the opening brief, but I'll remind the court that the court takes a practical approach to finality. It looks at the intent of the district court and the totality of those circumstances, and as Your Honors pointed out, the district court was clearly anticipating that the action would proceed. With regard to the form of the Rule 56D affidavit, the district court and the defense really want to elevate form over substance. The reality is that counsel had no choice but to request broad categories of facts, and with respect to the disputed facts, counsel is essentially saying that the court should trust the defendants, repeatedly saying the affidavits establish X, Y, or Z fact. If that's true, if affidavits establish facts, then why do we have discovery? Thank you. Thank you, counsel. Thank you both for your arguments. Case is submitted.